IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HARDRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 1334 |
| | ) | |
| CITY OF BOLINGBROOK, et al. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JAMES F. HOLDERMAN, Chief Judge:

On March 10, 2006, plaintiff Robert Hardrick ("Hardrick") filed a complaint against the City of Bolingbrook, and Bolingbrook police officers Limacher, Salerno, Riend, and Liazuk, alleging that the individual defendants violated his Fourth Amendment rights in violation of 42 U.S.C. § 1983. The defendants have filed a motion for summary judgment (Dkt. No. 16.) For the reasons stated below, the motion is granted.

## BACKGROUND

This case stems from Hardrick's arrest on March 14, 2005 by the defendant officers for aggravated battery, 720 Ill. Comp. Stat. 5/12-3(a)(2), and resisting or obstructing a peace officer in violation of 720 Ill. Comp. Stat. 5/31-1. The formal criminal complaint, dated March 16, 2006, listed battery as Count I, "in that, said defendant, without legal justification, knowingly made physical contact of an insulting and provoking nature with Eli Lamacher, in that defendant struck Eli Limacher in the arm." (Def. L.R. 56.1. Ex. 2.) Count II of the criminal complaint for resisting a peace officer stated that "defendant knowingly resisted the performance of Eli

1

Limacher, of an authorized act within his official capacity, being the arrest of Robert Hardrick, knowing Eli Limacher to be a peace officer engaged in the execution of his official duties, in that he fled from Eli Limacher and struggled while being handcuffed." (*Id*.)

Counsel for Hardrick filed a motion to quash the arrest, and a hearing on the motion was held on June 2, 2005 in front of a state court judge, where defendant Officers Liazuk and Limacher testified about Hardrick's arrest. Plaintiff Hardrick attached the transcript of the hearing, from which the court recounts the events leading up to Hardrick's arrest. (Pl. L.R. 56.1 Ex. 1, herein after "Tr.")

According to the testimony of Officer Liazuk, he and other officers received a dispatch stating that a black male wearing a black coat and a black female wearing a red coat were engaged in a domestic dispute in the parking lot of the Jewel grocery store at the intersection of Boughton and Route 53 in Bolingbrook, and that the man had been choking the woman. (Tr. at 3-4, 19, 21, 27-28, 30.) Responding to the dispatch, Officer Liazuk spotted two people matching the description of the dispatch walking from the Jewel and crossing Boughton Road to the BP Amoco gas station. (*Id*. at 4.) Officer Liazuk asked the two if they would come over and talk to him. (*Id.* at 7.) The woman chose to talk to Officer Liazuk, while the man, later identified as Hardrick, continued to walk away. (*Id.* at 7-8.) The woman informed Officer Liazuk that she had been in the Jewel parking lot moments ago and had engaged in a verbal argument with Hardrick. (*Id*. at 8.) Believing that these were the two individuals identified by the dispatch, Officer Liazuk radioed to his fellow officers, including Officer Limacher to stop Hardrick and provided directions as to Hardrick's approximate location. (*Id*. at 10.)

Almost simultaneously, upon hearing the radio message from Officer Liazuk, Officer

2

Limacher spotted Hardrick and stopped him. (Tr. at 10.) Officer Limacher asked Hardrick to stop, take his hands out of his pocket, and place them on Officer Limacher's squad car. (*Id.* at 33.) At that point, Officer Limacher testified that Hardrick was not free to leave. (*Id.* at 35.) In response to Officer Limacher's questions, Hardrick stated that he had been involved in an altercation, but the altercation was not physical. (*Id.*) Believing that a physical altercation had occurred, Officer Limacher asked Hardrick for his name and his birthdate. (*Id*. at 39.) Hardrick lied, giving the name Robert Carter and a different birthdate. (*Id.*) The several times that Officer Limacher ran the name given by Hardrick through dispatch no records on the name came back at all. (*Id*. at 41-42, 46, 49.) After a total of seven minutes had elapsed from the initial stop, Officer Limacher patted Hardick down for weapons. (*Id.* at 50.) Officer Limacher intended to search Hardrick more carefully for identification and had his hand on Hardrick's jacket, when Hardrick "spun off the car to his left, swinging his right arm, struck [Officer Limacher] in the left arm." (*Id*. at 53.) Hardrick then "took off running in the northeast direction." (*Id*. at 54.) Officer Liazuk, nearby at the time, gave chase and eventually Hardrick was stopped, handcuffed, and arrested. (*Id*. at 55.)

There was no testimony regarding any injuries that Hardrick may have suffered during or after the arrest provided to the court. The only evidence in the record regarding the use of excessive force or alleged injuries sustained by Hardrick was submitted to the court by Hardrick in the form of Hardrick's own unsworn answers to the defendants' interrogatories. Responding to the interrogatories, Hardrick answered that "I was beaten after I had stopped running and was peaceably waiting to be handcuffed. Defendant Limacher intentionally broke my wrist when he was handcuffing me. Limacher also sprayed mace in my eyes after I was handcuffed for no

3

reason other than sadistic glee." (Pl. L.R. 56.1 Ex. 2 Resp. 17.) This evidence, taken only from Hardrick's unsworn answers that he submitted to the court, is inadmissible hearsay that the court cannot consider on summary judgment. *See Dillard v. Chicago Transit Authority*, No. 00-C-8028, 2003 WL 22136309, *2 n.1 (N.D. Ill. Sept. 16, 2003) (party's own unsworn answers to interrogatories are inadmissible hearsay on summary judgment); *see also Stinnett v. Iron Work Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

Following the hearing regarding Hardrick's arrest, but before the decision by the judge, Hardrick pleaded guilty to Count II of the criminal complaint, resisting a peace officer, and the government dismissed Count I. In pleading guilty, Hardrick explicitly waived his right to hear the court's decision on his motion to quash his arrest. (Tr. at 112-13.)

Hardrick's for resisting a peace officer remains valid. Nonetheless, Hardrick filed a 2-page complaint, alleging only that "Defendants Limacher, Salerno, Riend, and Liazuk unlawfully arrested plaintiff on March 14, 2005," and that "In the course of making the above referred arrest, one or more of defendants Limacher, Salerno, Riend, and Liazuk used excessive and unreasonable force, causing the plaintiff to sustain personal injuries." (Cmpl. ¶¶ 5, 6.) The defendants subsequently filed the present motion for summary judgment.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, this court takes all facts and inferences in favor of the nonmoving

4

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Stinnett*, 301 F.3d at 613.

Because Hardrick's conviction for resisting a peace officer still stands, Hardrick cannot succeed on a civil tort claim if the lawsuit would be a collateral attack on the conviction, in that it would necessarily imply its invalidity. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). In other words, Hardrick would only be able to proceed on his claim if the success of his claim would not invalidate his criminal conviction. *Id*. at 487; *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006).

## ANALYSIS

Treating Hardrick's complaint as raising two claims, one for unlawful arrest, and one for excessive and unreasonable force, the defendants argue that the claims are *Heck*-barred, in addition to other defects. Turning first to the claim of unlawful arrest, the defendants contend that Hardrick pleaded guilty to the charge of resisting arrest and therefore his claim that there was no probable cause to support his arrest is foreclosed. The defendants are correct that

5

Hardrick's conviction based on his guilty plea would be invalidated, and thus *Heck*-barred, if Hardrick was allowed to argue that he was arrested for resisting a peace officer without probable cause. *See Case v. Milewski*, 327 F.3d 564, 569 (7th Cir. 2003.) In Illinois, so long as there is physical resistance, an officer has probable cause to arrest someone who resists an arrest attempt. *Case*, 327 F.3d at 569; *Ryan v. County of DuPage*, 45 F.3d 1090, 1093 (7th Cir. 1995.) In this case, Hardrick has pleaded guilty to the charge of resisting a peace officer. A guilty plea is an admission of all the facts in the formal criminal charge, which was the criminal complaint in this case. *McCarthy v. United States*, 394 U.S. 459, 466 (1969) ("a guilty plea is an admission of all the elements of a formal criminal charge."). Based on the criminal complaint, Hardrick has admitted to fleeing from Officer Limacher and struggling while being handcuffed. (Def. L.R. 56.1 Ex. 2.) Any finding that Hardrick did not physically resist, thus giving the officers probable cause to arrest him fro resisting a peace officer, would be a collateral attack of his conviction and barred under *Heck,* 512 U.S. 477.

Perhaps recognizing this intractable problem, Hardrick in his response explains that he is challenging as unlawful his "pre-resisting detention," and not his actual arrest. (Pl. Resp. at 4.) Among other arguments raised, the defendants first point out that his complaint referred to Hardrick's "unlawful arrest" and not any unlawful seizure, and therefore they did not have proper notice to respond to the claim and Hardrick should be limited to arguing only that the arrest was unlawful. Although the court understands the defendants' frustration, the term "unlawful arrest" may encompass a seizure without probable cause, which would not necessarily invalidate Hardrick's later arrest for resisting a peace officer. An unlawful arrest may occur when a person is seized without probable cause, and whether a person is seized depends on if a

6

reasonable person in the individual's position would have felt free to leave police custody. *See A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004.)

However, that an unlawful arrest may encompass a seizure ultimately does not assist Hardrick in his claim. Hardrick explicitly waived, when pleading guilty, his right to hear the state court's decision on his motion to quash his arrest, which addressed this exact issue of whether defendant officers unlawfully seized Hardrick before he resisted arrest. The state court held a hearing and was prepared to rule on the question, and Hardrick affirmatively chose to plead guilty before a decision was reached. In pleading guilty, Hardrick acknowledged to the court under oath that he was waiving the right to hear the court's decision on whether there had been an unlawful seizure, among other rights. (Tr. at 112-13.)

In any event, as the defendants alternatively argue, the stop and brief search by Officer Limacher was a lawful *Terry* stop and search, made with reasonable, articulable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). Officers may conduct an investigatory stop and brief pat-down search for weapons in accordance with *Terry* when they have a reasonable, articulable suspicion that criminal activity is afoot. *United States v. Lawshea,* 461 F.3d 857, 859 (7th Cir. 2006). Before stopping Hardrick, Officer Limacher had information from a dispatch that a black male wearing a black coat had been choking a black female wearing a red coat in the Jewel parking lot. Officer Liazuk then spotted the couple matching the description near the Jewel parking lot and learned from the woman that the two had been involved in at least a verbal altercation. Right before the stop, Officer Limacher received over the radio an order from Officer Liazuk to stop a black male wearing a black coat and walking in the direction of Officer Limacher, because he was the man from the dispatch. The above-factual pattern satisfies the

7

requirements of *Terry*; Officer Limacher had sufficient information for a reasonable, articulable suspicion that the man approaching him in the black coat, later identified as Hardrick, was involved in the criminal activity of a domestic altercation. Furthermore, the entire stop lasted only seven minutes, which was in part due to Hardrick's failure to cooperate by lying about his name. The subsequent *Terry* search for weapons and identification by Officer Limacher was also due in part to Hardrick's lying about his name. The *Terry* stop and search prior to Hardrick's resisting the peace officer was based on reasonable suspicion and not unlawful.

Regarding Hardrick's excessive-force claim, the defendants next argue that Hardrick's conviction for resisting a peace officer bars his claim of excessive force under *Heck* because excessive force is an affirmative defense to resisting a peace officer and Hardrick's success on the claim would invalidate his conviction, *see People v. Wicks*, 823 N.E.2d 1153, 1156 (Ill. App. Ct. 2005) (self defense is a defense to resisting a peace officer where peace officer used excessive force). The defendants point out that Hardrick is arguing that he was peaceably waiting to be handcuffed when the defendant officers allegedly exerted excessive force, despite having pleaded guilty to a criminal complaint stating that Hardrick struggled while being handcuffed. The defendants contend that Hardrick's argument of excessive force are necessarily inconsistent with the validity of the conviction.

As the Seventh Circuit recently clarified, a claim of excessive force does not per se invalidate a conviction for resisting arrest unless the plaintiff's factual allegations and arguments are necessarily inconsistent with the validity of the conviction. *See McCann v. Neilsen,* No. 05-3699, slip. op. at 5-6 (7th Cir. Oct. 26, 2006); *VanGilder*, 435 F.3d at 692. If Hardrick can establish that the alleged use of excessive force occurred after the arrest or the defendants'

response to Hardrick's resistence was not objectively reasonable under the law governing excessive use of force, then a successful claim of excessive force would not necessarily invalidate Hardrick's conviction. *See VanGilder*, 435 F.3d at 692.

Both parties assert that the alleged use of excessive force occurred while Hardrick was waiting to be handcuffed; the parties dispute whether he was still resisting arrest at this time. The defendants contend that any alleged use of excessive force occurred while Hardrick was resisting a peace officer, and for support, the defendants point to the criminal complaint. The underlying facts in the criminal complaint to which Hardrick pleaded guilty are that Hardrick resisted a peace officer "in that he fled from Eli Limacher and struggled while being handcuffed." (Def. L.R. 56.1 Ex. 2); *McCarthy*, 394 U.S. at 466. In support of Hardrick's contention that he was no longer resisting arrest when the defendants allegedly used excessive force (Pl. Mem. at 5), he attaches his own unsworn answers to defendants' interrogatories, in which he claims to have been "beaten after I had stopped running and was peaceably waiting to handcuffed." (Pl. L.R. 56.1 Ex. 2 at Resp. 17.) Problematically for Hardrick, his own unsworn answers to the defendants' interrogatories are inadmissible hearsay evidence that cannot be considered on summary judgment. *Dillard*, 2003 WL 22136309 at *2 n.1. Thus, the court is left only with the evidence from the criminal complaint that Hardrick was still resisting arrest while being handcuffed.

If the defendants were using excessive force while handcuffing Hardrick, then Hardrick's resistance while being handcuffed could have been argued to be self-defense to the criminal charge of resisting a peace officer. *See Wicks*, 823 N.E.2d at 1156. Hardrick, however, pleaded guilty to resisting a peace officer, never asserting self defense, and thus waiving that defense to

the criminal charge. Hardrick's success on the claim that the defendants had used excessive force would potentially excuse Hardrick's resistence while being handcuffed as self defense and invalidate his conviction for resisting a peace officer. Hardrick's excessive-force claim is *Heck*-barred.

In any event, Hardrick did not submit any admissible evidence that the defendants used excessive force at all or that he suffered any injuries. The only evidence in the record regarding the use of excessive force and Hardrick's injuries was the submission by Hardrick of his own unsworn answers to the defendants' interrogatories, which constitute inadmissible hearsay. *See Dillard*, 2003 WL 22136309 at *2 n.1. Thus, Hardrick's unsworn answers to the defendants' interrogatories that the defendants used excessive force while handcuffing him and maced him after he was handcuffed cannot be considered by the court on summary judgment. Without admissible evidence of excessive force, let alone any injuries Hardrick suffered, Hardrick's claim fails on the merits.

## CONCLUSION

Accordingly, the defendants' motion for summary judgment (Dkt No. 16) is granted. Judgment is entered in favor of the defendants and against the plaintiff. The case is terminated.

ENTER:

```
                              _____
                              JAMES F. HOLDERMAN
                              Chief Judge, United States District Court
```

Date: October 31, 2006